IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CELESTE LUCERO,

    Plaintiff,

    vs.                                        Civ. No. 17-965 SCY

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.

**MEMORANDUM OPINION AND ORDER[1]**

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 11)[2] filed January 2, 2018, in connection with Plaintiff's *Motion to Reverse and Remand for Rehearing With Supporting Memorandum,* filed March 19, 2018. Doc. 17. Defendant filed a Response on May 14, 2018. Doc. 19. And Plaintiff filed a Reply on June 1, 2018. Doc. 20. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is well taken and shall be **GRANTED**.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 5, 6, 7.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 11), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Celeste Lucero (Ms. Lucero) alleges that she became disabled on June 3, 2010, at the age of twenty-nine, because of rheumatoid arthritis and fibromyalgia. Tr. 171. Ms. Lucero completed the twelfth grade in 1998, and worked as a sales associate and general clerk. Tr. 172, 206-10. Ms. Lucero's date of last insured is December 31, 2014. Tr. 168.

Ms. Lucero filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, on August 23, 2013. Tr. 152-53. Ms. Lucero's application was denied at the initial level (Tr. 64-73, 74, 88-91), and at reconsideration (Tr. 75-86, 87, 96-100). Upon Ms. Lucero's request, Administrative Law Judge (ALJ) Deirdre Dexter held a hearing on August 17, 2016. Tr. 25-63. Attorney Johnathan Woods represented Ms. Lucero at that hearing.[3] *Id.* On August 31, 2016, ALJ Dexter issued a written decision concluding that Ms. Lucero was "not disabled" pursuant to the Act. 8-19. On August 9, 2017, the Appeals Council denied Ms. Lucero's request for review, rendering ALJ Dexter's August 31, 2016, decision the final decision of Defendant the Commissioner of the Social Security Administration. Tr. 1-5. Ms. Lucero timely filed a complaint on September 21, 2017, seeking judicial review of the Commissioner's final decision. Doc. 1.

## II. APPLICABLE LAW

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits or supplemental security income if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[3] Ms. Lucero is represented in these proceedings by Attorney Laura J. Johnson. Doc. 1.

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If Claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If Claimant is not so impaired, she is not disabled and the analysis stops.

(3) If Claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, Claimant is presumed disabled and the analysis stops.

(4) If, however, Claimant's impairment(s) are not equivalent to a listed impairment, Claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [Claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of Claimant's past work. Third, the ALJ determines whether, given Claimant's RFC, Claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that Claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, Claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

## III. ANALYSIS

The ALJ made her decision that Ms. Lucero was not disabled at step five of the sequential evaluation. Tr. 18-19. The ALJ determined that Ms. Lucero met the insured status requirements of the Social Security Act through December 31, 2014 (Tr. 13), and that she had not engaged in substantial gainful activity since June 3, 2010, the alleged onset date. *Id.* She found that Ms. Lucero had severe impairments of inflammatory arthritis, fibromyalgia, affective disorder, and hypermobility syndrome. *Id.* The ALJ also found that Ms. Lucero had a "non-medically determinable impairment of anxiety." *Id.* The ALJ determined, however, that Ms. Lucero's impairments did not meet or equal in severity one of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. Tr. 13-15. Accordingly, the ALJ proceeded to step four and found that Ms. Lucero had the residual functional capacity to perform a reduced range of sedentary work as defined in 20 C.F.R. § 404.1567(a). The ALJ found that Ms. Lucero was

> able to lift, carry, push or pull up to 5 pounds frequently and 10 pounds occasionally; able to sit for up to 6 hours in an 8-hour workday; able to stand and/or walk up to 2 hours in an 8-hour workday; able to occasionally climb ramps or stairs, balance, or stoop; should never kneel, crouch or crawl, or climb ladders, ropes or scaffolds; job should not involve concentrated exposure to cold, vibration, unprotected heights or hazardous moving mechanical parts; able to occasionally interact with supervisors as needed to receive work instructions; able to perform simple, routine tasks; individual cannot perform work at a fast-paced production rate; able to work in proximity to co-workers but should have no more than occasional direct work interaction with co-workers; should never interact with the general public; able to make simple work-related decisions; and job should involve no more than ordinary and routine changes in work setting or work duties.

Tr. 15-16. The ALJ concluded at step four that Ms. Lucero was unable to perform her past relevant work. Tr. 17. At step five, the ALJ determined that based on her age, education, work experience, RFC, and the testimony of the VE, that there were jobs existing in significant

numbers in the national economy that Ms. Lucero could perform and that she was, therefore, not disabled. Tr. 18-19.

Ms. Lucero argues that (1) the ALJ erred by failing to properly weigh the opinion of treating rheumatologist Vijayalakshmi Kumar, M.D., in violation of SSR 96-2p; (2) the ALJ erred by improperly rejecting the opinion of treating provider Jill Griggs, LPCC, in violation of SSR 06-3p; and (3) the ALJ's RFC is not based on substantial evidence because she failed to account for Ms. Lucero's subjective allegations of pain and other symptoms. Doc. 17 at 15-24. Because the Court finds that the ALJ committed legal error in her consideration of Dr. Kumar's opinions, the Court will reverse and remand for further proceedings consistent with this Opinion.

### A. The ALJ's Consideration of Dr. Kumar's Opinions

Ms. Lucero's treatment relationship with Rheumatologist Vijayalakshmi Kumar, M.D., began on August 17, 2010. Tr. 300-01. Ms. Lucero had been referred by her primary care physician Bhalachandra Kulkarni, M.D., for polyarthralgias, elevated sedimentation rate, and C-reactive protein. Tr. 300. When Ms. Lucero presented to Dr. Kumar, she complained of worsening arthralgias and myalgias, fevers, and pain, discomfort and subjective swelling involving multiple joints including her hands and ankles. *Id.* On physical exam, Dr. Kumar noted, *inter alia,* that Ms. Lucero had no synovitis with normal range of motion in shoulders, elbows, wrists, hips, knees, and ankles. *Id.* Dr. Kumar also noted Ms. Lucero's lab results. *Id.* Based on the lab results, Dr. Kumar's impression was inflammatory polyarthritis. Tr. 301. Dr. Kumar prescribed Prednisone and Plaquenil and ordered additional lab work. *Id.* Dr. Kumar instructed Ms. Lucero to return for follow up in eight weeks. *Id.*

Dr. Kumar continued to manage Ms. Lucero's inflammatory polyarthritis at regular intervals over the next six years, and made additional diagnoses of fibromyalgia/myofascial pain

syndrome, hypermobility syndrome, and depression during that time. Tr. 266-301, 327-50, 536-43, 548-54, 565-608, 622-33. All told, Dr. Kumar saw Ms. Lucero twenty-five times over six years, nineteen of which occurred *before* Ms. Lucero's date of last insured. Tr. 266-301, 327-50, 590-608.

On July 13, 2016, Dr. Kumar prepared a *Medical Assessment of Ability To Do Work-Related Activities (Physical)* on Ms. Lucero's behalf. Tr. 636. The form instructions directed Dr. Kumar to "consider patient's medical history and the chronicity of findings as from **2012 to current examination**." Tr. 636 (emphasis in original). Dr. Kumar assessed that Ms. Lucero could not maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently because of pain and fatigue. *Id.* She also assessed that Ms. Lucero could occasionally lift 10 pounds, frequently lift 5 pounds, stand and/or walk for less than 2 hours in an 8-hour workday, sit for less than 4 hours in an 8-hour workday, was limited in her ability to push, pull and reach in all directions, and that she could occasionally to never kneel, stoop and crouch, and could never crawl. *Id.* Finally, Dr. Kumar assessed that Ms. Lucero's non-physical work activities were affected by symptoms like pain, fatigue, sleep disturbances, visual difficulties, neurocognitive problems, fainting, dizziness, or mental problems. *Id.* In support of her assessment, Dr. Kumar indicated that Ms. Lucero had fibromyalgia and had chronic pain in her joints and muscles. *Id.*

On July 13, 2016, Dr. Kumar also prepared a *Medical Assessment of Ability To Do Work-Related Activities (Non-Physical)* on Ms. Lucero's behalf. Tr. 635. Dr. Kumar assessed that Ms. Lucero suffered from a pain-producing impairment, injury or sickness; that her pain was severe; that she suffered from sleep disturbances due to pain or any other cause; that she suffered from fatigue as a result of her impairments; and that she had to rest or lie down at regular

7

intervals because of her pain and/or fatigue. *Id.* Dr. Kumar further assessed that Ms. Lucero had *moderate limitations* in her ability to maintain attention and concentration for extended periods (i.e. 2-hour segments), and had *marked limitations* in her ability to (1) perform activities within a schedule; (2) maintain regular attendance and be punctual within customary tolerance; (3) maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittingly (*i.e.,* 2-hour segments); (4) sustain an ordinary routine without special supervision; (5) work in coordination with/or proximity to others without being distracted by them; and (6) make simple work-related decisions. *Id.* Dr. Kumar explained that Ms. Lucero had chronic pain, fatigue, and sleep and mood issues, with fibromyalgia. *Id.*

In her decision, the ALJ only discussed Dr. Kumar's medical assessment related to Ms. Lucero's ability to do work-related physical activities, but did not discuss what weight, if any, she assigned to that opinion. Tr. 17. Instead, the ALJ explained as to that assessment, without more, that

> Dr. Kumar's opinions regarding claimant's limitations are not entirely consistent with report in Exhibit 7F; for example notes mood and affect are normal; gait is normal; range of motion in shoulders, elbows, wrists, and knees appear normal; few tender points; no synovitis in any of the joints; and morning stiffness 15-20 minutes in the morning.

Tr. 17.

### B. Relevant Law

"An ALJ must evaluate every medical opinion in the record," but the weight accorded to such "opinion[s] will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *see* 20 C.F.R. § 404.1527(b)-(c). Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-

8

supported by the medical evidence and are consistent with the record. 20 C.F.R. § 404.1527(c)(2). This is known as the "treating physician rule." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight. *See Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

First, the ALJ must determine whether the treating physician's opinions are entitled to controlling weight. *Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2)). In making this initial determination, the ALJ must consider whether the opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)); *Watkins*, 350 F.3d at 1300. If the opinion meets both criteria, the ALJ must give the treating physician's opinion controlling weight. *Id.* To give anything less than controlling weight, the ALJ must demonstrate with substantial evidence that the opinion (1) is not "well supported by medically acceptable clinical and laboratory diagnostic technique," or (2) is "inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). "Under the regulations, the agency rulings, and our case law, an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating [source's] opinion." *Watkins*, 350 F.3d at 1300.

If the ALJ does not assign a treating source's opinion controlling weight, the opinions must be weighed using the following six factors:

9

> (1) the length of the treatment relationship and the frequency of examination;
> (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins,* 350 F.3d at 1301; 20 C.F.R. § 404.1527(c). Not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary. What is absolutely necessary, however, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119; *see also* 20 C.F.R. §§ 404.1527(c)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004). Even if an ALJ determines that a treating source opinion is not entitled to controlling weight, the opinion still is entitled to deference. SSR 96-2p, 1996 WL 374188, at *4;[4] *Watkins*, 350 F.3d at 1300.

### C. The ALJ Erred In Her Evaluation of Dr. Kumar's Opinions

It is undisputed that Dr. Kumar is a treating physician. Therefore, the ALJ was required to evaluate *both* of Dr. Kumar's opinions pursuant to the two-part treating physician inquiry.[5] *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The ALJ failed to do so. This is reversible error. Moreover, the ALJ's lack of a developed analysis regarding Dr. Kumar's opinions prevents the Court from engaging in a meaningful judicial review of the ALJ's

---

[4] SSR 96-2p explained how adjudicators should evaluate medical opinions from treating sources, including when it is appropriate to give controlling weight to medical opinions from treating sources. The final rules revised these policies for claims filed on or after March 27, 2017, in several ways. For example, adjudicators will not assign a weight, including controlling weight, to any medical opinion for claims filed on or after March 27, 2017. SSR 96-2P, 2017 WL 3928298, at *1.

[5] It is undisputed that the date on which Dr. Kumar completed the medical source statements post-dates Ms. Lucero's date of last insured. However, the medical source statements make a direct reference to the relevant period of time adjudicated by the ALJ; *i.e.,* 2012 to the current examination. (*Id.*) Moreover, the medical source statements directly relate to Dr. Kumar's treatment notes which began on August 17, 2010, and continued through June 22, 2016.

determination. *Watkins*, 350 F.3d at 1300. Although the Commissioner concedes that the ALJ did not exactly state what weight she gave Dr. Kumar's opinions, she argues that the ALJ nonetheless made clear that she rejected them because Dr. Kumar's examination findings were inconsistent with her extreme opinions. Doc. 19 at 8-10. For the reasons discussed below, the Court is not persuaded. Moreover, the ALJ's lone explanation for either discounting or rejecting Dr. Kumar's assessment regarding Ms. Lucero's abilities to do work-related physical activities does not comply with the Tenth Circuit's requirements in *Watkins* and is simply insufficient.

As an initial matter, the ALJ did not even mention, let alone discuss, Dr. Kumar's assessment regarding Ms. Lucero's ability to do work-related mental activities. Thus, the ALJ's determination fails to demonstrate that she considered this evidence as she was required to do. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Additionally, although an ALJ need not give controlling weight to a treating physician's opinion on matters outside of her expertise, an ALJ is not justified in totally rejecting, or ignoring, the opinion because a treating physician's lack of expertise goes to the weight of the opinion. *Turley v. Sullivan*, 939 F.2d 524, 527 (8th Cir. 1991). Thus, it was error for the ALJ to ignore Dr. Kumar's assessment of Ms. Lucero's ability to do work-related mental activities.

That aside, the ALJ's discussion related to Dr. Kumar's assessment regarding Ms. Lucero's ability to do work-related physical activities is insufficient and not supported by substantial evidence. For example, the ALJ stated, without more, that Dr. Kumar's assessment of Ms. Lucero's ability to do work-related physical activities was not entirely consistent with "report in Exhibit 7F." Tr. 17. This explanation is problematic on its face for at least two reasons. First, it is not clear to the Court if the ALJ is relying on the entirety of Exhibit 7F or

only certain parts therein.[6] Second, if the ALJ is only relying on parts of the exhibit, it is not clear to the Court which parts of Dr. Kumar's assessment were not entirely consistent with Exhibit 7F.[7]

The ALJ's explanation is also problematic substantively because, although the ALJ correctly cited Dr. Kumar's physical exam findings contained in the two relevant treatment notes from Exhibit 7F, the ALJ ignored everything else therein, including Dr. Kumar's impressions which indicated diagnoses of and treatment for inflammatory polyarthritis, fibromyalgia/ myofascial pain syndrome, depression and mood disorders. *Id.* Additionally, the ALJ failed to discuss or even reference any of the other seventeen treatment notes Dr. Kumar generated during the relevant period of time related to Ms. Lucero's physical impairments that were elsewhere in the medical evidence record, all of which consistently indicated similar diagnoses and treatment.[8]

Finally, even assuming as correct the Commissioner's argument that the ALJ made clear that she rejected Dr. Kumar's opinions, an ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). Here, the only measurable weight the ALJ accorded to any medical opinion

---

[6] Exhibit 7F consists of ninety-nine pages of treatment notes from various providers at ABQ Health Partners from June 11, 2014, through March 22, 2016 (Tr. 535-633), only two of which were generated by Dr. Kumar during the relevant period of time; *i.e.,* before December 31, 2014. Tr. 589-98, 599-607.

[7] The Commissioner argues that even though the ALJ did not exactly state what weight she gave Dr. Kumar's opinions, the ALJ nonetheless made clear that she rejected them. However, in stating that Dr. Kumar's assessment was not entirely consistent with Exhibit 7F, the ALJ necessarily implies some consistency. As such, the Court is not persuaded that it is clear that the ALJ rejected Dr. Kumar's assessment of Ms. Lucero's ability to do work-related physical activities. Moreover, the ALJ's RFC assessment reflects certain of Dr. Kumar's assessed physical limitations; *i.e.,* that Ms. Lucero could lift and/or carry 10 pounds occasionally and 5 pounds frequently, and that Ms. Lucero should never kneel, crouch or crawl. Compare Tr. 636 with Tr. 15. Thus, the ALJ erred in failing to explain her reasons for accepting certain of Dr. Kumar's assessed limitations while rejecting others.

[8] The ALJ incorrectly stated that Dr. Kumar had been treating Ms. Lucero since "at least 2014." Tr. 17. The record clearly demonstrates that Dr. Kumar began treating Ms. Lucero on August 17, 2010. Tr. 300-01. The ALJ did not discuss any of Dr. Kumar's seventeen treatment notes from August 17, 2010, through April 23, 2014, all of which related to the relevant period of time.

evidence was "some weight" to the State agency consultant opinions.[9] Tr. 17. In doing so, the ALJ explained, without more, that the

> [p]hysicians at the State Disability Determinations Division (DDD) have been considered and are given some weight; however, medical evidence of record prior to DLI, but not available to the DDD, when considered in light of claimant's other medical evidence of record indicate greater limitations are appropriate.

*Id.* This is insufficient. Moreover, Dr. Kumar, as a treating physician who saw Ms. Lucero nineteen times during the relevant period of time, should be afforded more weight than the State agency medical consultants who never examined Ms. Lucero and who, according to the ALJ, did not have the benefit of medical evidence of record prior to Mr. Lucero's date of last insured. *See Robinson,* 366 F.3d at 1084 (explaining that absent a legally sufficient explanation, the opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all).

In sum, the Court finds that the ALJ did not follow the correct legal standards in considering Dr. Kumar's opinions, and that her lone explanation for discounting or rejecting Dr. Kumar's assessment related to Ms. Lucero's ability to do work-related physical activities is insufficient and not supported by substantial evidence. This is reversible error.

---

[9] The ALJ accorded "little weight" to Ms. Lucero's mental health providers - LPCC Jill Griggs and Janice Penn, Ph.D. – explaining that their opinions were based on treatment records after the date last insured. Tr. 14. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (explaining that according little weight is effectively rejecting an opinion). Ms. Lucero argues the ALJ improperly rejected the opinion of treating provider Jill Griggs, LPCC; however, because the Court is remanding on other grounds, it does not address this issue.

### D. Remaining Issues

The Court will not address Plaintiff's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### IV. CONCLUSION

For the reasons stated above, Ms. Lucero's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 17) is **GRANTED.** The Court reverses the Commissioner's decision denying Plaintiff benefits and remands this action to the Commissioner to conduct further proceedings consistent with this Opinion.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge,**
**Presiding by Consent**